UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE RICHARD K. EATON, JUDGE

———————————————————— )
                                                        )
DIAMOND SAWBLADES                  )
MANUFACTURERS' COALITION,      )
                                                        )
                    Plaintiffs,                   )
                                                        )
          v.                                          )          Court No. 13-00391
                                                        )
UNITED STATES DEPARTMENT OF  )
COMMERCE and UNITED SATES     )
INTERNATIONAL TRADE               )
COMMISSION,                             )
                                                        )
                    Defendants.               )
———————————————————— )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

STUART F. DELERY
Assistant Attorney General

JEANNE E. DAVIDSON
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

NATHANIEL HALVORSON
Attorney
Office of the Chief Counsel
  for Trade Enforcement and Compliance
U.S. Department of Commerce

ALEXANDER V. SVERDLOV
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
PO Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-5928
Email:  alexander.v.sverdlov@usdoj.gov

June 20, 2014

Attorneys for Defendant United States

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

STATEMENT PURSUANT TO RULE 56.2 ......................................................................... 2

     I.     The Administrative Determination Under Review ................................................. 2

     II.    Issue Presented For Review .................................................................................. 2

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ...................................................................................................................... 5

     I.     The Diamond Sawblades Antidumping Order Was Constructively
             Published On January 23, 2009 ............................................................................ 6

     II.    Using The Constructive Publication Date In Place Of The *Federal*
             *Register* Date Is Consistent With The Statutory Scheme ..................................... 9

CONCLUSION................................................................................................................. 14

## <u>TABLE OF CONTENTS</u>

<u>Cases</u>

*Agro Dutch Indus., Ltd. v. United States,*
    508 F.3d 1024 (Fed. Cir. 2007) ................................................................................ 11

*AK Steel Corp. v. United States,*
    226 F.3d 1361 (Fed. Cir. 2000) ................................................................................ 10

*Cathedral Candle Co. v. United States ITC,*
    285 F. Supp. 2d 1371 (Ct. Int'l Trade 2003) ........................................................... 6

*Decca Hospitality Funishing, LLC v. United States,*
    30 CIT 357 (2006) ...................................................................................................... 9

*Diamond Sawblades Mfrs. Coalition v. United States,*
    33 CIT 48 (2009) ......................................................................................................... 3

*Diamond Sawblades Mfrs. Coalition v. United States,*
    626 F.3d 1374 (Fed. Cir. 2010) ........................................................................ 2, 5, 7, 9

*Diamond Sawblades Mfrs. Coalition v. United States,*
    650 F. Supp. 2d 1331 (Ct. Int'l Trade 2009) ................................................... passim

*Nippon Steel Corp. v. United States,*
    433 F. Supp. 2d 1336 (2006), .................................................................................. 13

*NSK Corp. v. United States ITC,*
    716 F.3d 1352 (Fed. Cir. 2013) ................................................................................ 10

*Timken Co. v. United States,*
    893 F.2d 337 (Fed. Cir. 1990) .................................................................................... 3

*Timken United States Corp. v. United States,*
    421 F.3d 1350  (Fed. Cir. 2005) ............................................................................... 10

*Tianjin Magnesium Int'l Co., Ltd. v. United States,*
    533 F. Supp. 2d 1327 (2008) ...................................................................................... 9

<u>Statutes</u>

19 U.S.C. § 1516a ............................................................................................................. 3

19 U.S.C. § 1673 ...................................................................................................... 3, 6, 12

19 U.S.C. § 1675 .................................................................................................... passim

19 U.S.C. § 3512 (1999) ........................................................................................... 10

 **Administrative Determinations**

*Diamond Sawblades and Parts Thereof from China and Korea*,
    70 Fed. Reg. 43,903 (Int'l Trade Comm'n July 29, 2005) ....................................... 3

*Diamond Sawblades and Parts Thereof From China Institution of a Five-Year Review*,
    78 Fed. Reg. 72,116 (Int'l Trade Comm'n Dec. 2, 2013)........................................... 2

*Diamond Sawblades and Parts Thereof From the People's Republic of China and the
    Republic of Korea*,
    74 Fed. Reg. 57,145 (Dep't of Commerce Nov. 4, 2009)....................................... 1, 4

*Diamond Sawblades and Parts Thereof from the People's Republic of China and the
    Republic of Korea: Notice of Court Decision Not In Harmony With Final
    Determination of the Antidumping Duty Investigations*,
    74 Fed. Reg. 6570 (Dep't of Commerce Feb. 10, 2009) ......................................... 3

*Policies Regarding the Conduct of Five-year ("Sunset") Reviews of Antidumping and
    Countervailing Duty Orders; Policy Bulletin*,
    63 Fed. Reg. 18,8712 (Dep't of Commerce Apr. 16, 1998) ................................... 10

*Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request
    for Revocation in Part*,
    78 Fed. Reg. 79,3924 (Dep't Commerce Dec. 1, 2013) .......................................... 13

*Initiation of Five-Year ("Sunset") Review*,
    78 Fed. Reg. 72,061 (Dep't of Commerce Dec. 2, 2013)...................................... 2, 5

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE RICHARD K. EATON, JUDGE

_____
                                        )
DIAMOND SAWBLADES                       )
MANUFACTURERS' COALITION,               )
                                        )
            Plaintiffs,                 )
                                        )
            v.                          )        Court No. 13-00391
                                        )
UNITED STATES DEPARTMENT OF             )
COMMERCE and UNITED SATES               )
INTERNATIONAL TRADE                     )
COMMISSION,                             )
                                        )
            Defendants.                 )
_____ )

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade,

defendant, the United States Department of Commerce (Commerce), respectfully submits this

response in opposition to the plaintiff's motion for judgment on the administrative record.  In

that motion, plaintiff, the Diamond Sawblades Manufacturers' Coalition (the Coalition),

contends that Commerce and the International Trade Commission (ITC) have improperly

initiated the sunset reviews of the antidumping duty order on diamond sawblades from China;

according to the Coalition, that review cannot commence until November of this year.  As we

explain below, however, the agencies' initiation of the reviews was reasonable and supported by

substantial evidence.  Accordingly, we respectfully request that the Court deny the Coalition's

motion and enter judgment for the United States.

<u>**STATEMENT PURSUANT TO RULE 56.2**</u>

**I.**      <u>**The Administrative Determination Under Review**</u>

The administrative determinations at issue in this proceeding are *Initiation of Five-Year ("Sunset") Review*, 78 Fed. Reg. 72,061 (Dep't of Commerce Dec. 2, 2013) and *Diamond Sawblades and Parts Thereof From China Institution of a Five-Year Review*, 78 Fed. Reg. 72,116 (Int'l Trade Comm'n Dec. 2, 2013).

**II.**      <u>**Issue Presented For Review**</u>

The statute requires Commerce and the ITC to conduct a sunset review "to determine . . . whether revocation of the . . . order . . . would be likely to lead to a continuation or recurrence of dumping . . . and of material injury."  19 U.S.C. § 1675(c).  This review is to be conducted "5 years after the date of publication" of the order.  *Id.*  The issue presented here is whether Commerce reasonably exercised its discretion to interpret the order's effective date as the constructive date of publication that should be used to initiate the sunset review.

<u>**STATEMENT OF FACTS**</u>

The circumstances of the underlying antidumping duty order are familiar to this Court. The domestic industry — acting through the Coalition — originally petitioned Commerce to impose antidumping duties on certain diamond sawblades imported from China and Korea in 2005.  *See Diamond Sawblades Mfrs. Coalition v. United States*, 626 F.3d 1374, 1376 (Fed. Cir. 2010).  In response to the petition, Commerce and the ITC initiated antidumping investigations. *Id.*  During its investigation, Commerce concluded that the subject imports were being sold in the United States at less than fair value.  *Id.*  Meanwhile, the ITC made a preliminary determination that there was a reasonable likelihood that an industry in the United States was materially injured or threatened with material injury.  *Diamond Sawblades and Parts Thereof from China and*

*Korea*, 70 Fed. Reg. 43,903 (Int'l Trade Comm'n July 29, 2005).  In its final results, however, the ITC made a negative determination, concluding that the domestic industry was not materially injured or threatened with injury.  *Id.*  As a result, no order was issued.

The Coalition then challenged the ITC's negative injury determination in this Court and, ultimately, the Court remanded the matter back to the ITC for further proceedings.  *Id.*  On remand, the ITC reversed its earlier determination, and found a threat to the domestic industry. *Id.*  This Court issued a decision affirming the ITC's redetermination on January 13, 2009.  *See Diamond Sawblades Mfrs. Coalition v. United States*, 33 CIT 48 (2009).  The ITC notified Commerce of this decision nine days later, on January 22, 2009.

Because the Court's decision was "not in harmony" with the ITC's original negative determination, Commerce published a *Timken Notice* suspending liquidation as of January 23, 2009, pending expiration of the period for appeal.  *See* 19 U.S.C. § 1516a(c)(1) (notice of court's adverse decision required to be published not later than 10 days after such decision); *Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990); *see also Diamond Sawblades and Parts Thereof from the People's Republic of China and the Republic of Korea: Notice of Court Decision Not In Harmony With Final Determination of the Antidumping Duty Investigations*, 74 Fed. Reg. 6570 (Dep't of Commerce Feb. 10, 2009).  However, Commerce did not publish the antidumping duty order because, at that time, Commerce's long-standing practice was that it was not required to issue orders until a case was resolved on appeal or the time for appeals had expired.

The Coalition took a different view, and petitioned this Court for a writ of mandamus directing Commerce to publish the antidumping duty order.  *See Diamond Sawblades Mfrs. Coalition v. United States*, 650 F. Supp. 2d 1331, 1334 (Ct. Int'l Trade 2009) ("DSMC asserts that, pursuant to 19 U.S.C. §§ 1673d(c)(2) and 1673e(a), Commerce's obligation to issue and

publish antidumping duty orders and collect cash deposits was triggered when it received the

ITC's notice that this court had issued a final decision sustaining the affirmative Remand

Determination. ").

The Court agreed with the Coalition.  *See id.* at 1342.  Specifically, the Court held that

Commerce had a duty to publish antidumping duty orders upon notification from the ITC.  *Id.* at

1357.  As the Court explained, its decision affirming the ITC's remand was a "judgment . . . that

is adverse to an agency determination has the immediate effect of altering the administrative

*status quo* and changes the legal relationship between the litigants."  *Diamond Sawblades Mfrs.*

*Coalition*, 650 F. Supp. 2d at 1356.  Commerce had a duty to immediately comply with that

decision by publishing the order.  *Id.*  Doing otherwise was contrary to law and risked contempt.

*Id.* at 1352–53.  The Court then issued a writ of mandamus directing Commerce to comply with

the Court's prior decisions and publish the order.  *See id.* ("[I]n accordance with this opinion and

in accordance with the Notice of January 22, 2009 from the ITC to Commerce, the Department

of Commerce . . . will be ordered to issue and publish antidumping duty orders and require the

collection of cash deposits on subject merchandise.").

 Commerce published the order in the *Federal Register* on November 4, 2009.  *See*

*Diamond Sawblades and Parts Thereof From the People's Republic of China and the Republic*

*of Korea: Antidumping Duty Orders*, 74 Fed. Reg. 57,145 (Dep't of Commerce Nov. 4, 2009).

However, to give full effect to the Court's decision, the order was retroactive to January 23,

2009.  Doing so ensured that Commerce was in full compliance with all the decisions of the

Court.

Having thus complied with the Court's order, the United States appealed the writ of

mandamus to the United States Court of Appeals for the Federal Circuit.  The Federal Circuit

held that the "Court of International Trade did not abuse its discretion in ordering Commerce to publish antidumping duty orders upon receipt of notice from the International Trade Commission of a final affirmative injury determination." *Diamond Sawblades Mfrs. Coalition*, 626 F.3d at 1382–83.  The Court explained that "the statutory scheme imposes a mandatory duty on Commerce to issue antidumping duty orders covering the subject entries upon being notified of the Commission's final determination, a notification that in this case occurred on January 22, 2009." *Id.*  In other words, "when notice of that determination was given to Commerce, that notice triggered Commerce's duty to issue antidumping duty orders and begin collecting cash deposits on the subject entries." *Id.* at 1382.  Thus, the order stayed in place effective January 23, 2009.

Commerce has now initiated — and the ITC has instituted — five-year sunset reviews from this January 2009 effective date.  *See Initiation of Five-Year "Sunset" Review*, 78 Fed. Reg. 72,061 (Dep't of Commerce Dec. 2, 2013).  The Coalition filed this suit seeking to delay those reviews.

## **ARGUMENT**

The Coalition insists that this case can be resolved based simply on the statute — in the Coalition's view, 19 U.S.C. § 1675(c) requires Commerce and the ITC to delay the sunset review.  That argument misses the central issue here.  Section 1675(c)'s command to conduct a sunset review "5 years after the date of publication" of an antidumping order is not, in itself, ambiguous — what is unclear, however, is how that command applies in this case.  As we have noted many times, although the antidumping order on Diamond Sawblades appeared in the *Federal Register* on November 4, 2009, the order had a much earlier effective date — January 23, 2009.  That effective date performs all the legal functions normally associated with

publication.  As a result, it represents the order's *constructive* publication date.  Initiating the sunset review based on this constructive publication date was a reasonable choice.

## I.      The Diamond Sawblades Antidumping Order Was Constructively Published On January 23, 2009

There is no dispute in this case about the normal meaning of the term "publication."  Typically, "publication" of an order occurs when it appears in the *Federal Register*.  However, like notice, publication can also be constructive — under certain circumstances, it can be found to have happened by operation of law.  *Cf., e.g.*, *Cathedral Candle Co. v. United States ITC*, 285 F. Supp. 2d 1371, 1378 n.10 (Ct. Int'l Trade 2003) (noting that case law and statutes establish when constructive notice happens).  Such is the case here; the circumstances of the diamond sawblades order make its January 23, 2009, effective date the constructive date of publication.

Generally, publication of the order marks when it becomes operative and the domestic industry begins to enjoy all the protections that an order provides, including the collection of cash deposits on entries.  *See* 19 U.S.C. § 1673(e).  Here, however, the order was made retroactively operative, and its protections were made to extend back *before* its *Federal Register* date.  Indeed, when it made the order effective to January 23, 2009, Commerce issued instructions to U.S. Customs and Border Protection to "continue to suspend liquidation of . . . shipments" entered on or after January 23, 2009 and to "apply the current policy and procedures for retroactive collection of cash deposits."  Def. Resp. Pl. Mot., ECF Doc. No. 21 (filed Feb. 3, 2014), App. A (Commerce's instructions).  This retroactive collection of cash deposits was distinct from the retroactive suspension of liquidation.  Indeed, it was a unique mechanism to fully effectuate the order as of January 23, 2009.

Commerce did so to correct what the Court found to be an error — namely, not submitting the order for publication in January 2009.  Specifically, in *Diamond Sawblades Mfrs.*

*Coalition*, 650 F. Supp. 2d at 1356, the Court held that not publishing the order in January 2009 was inconsistent with the statute and the Court's judgment that affirmed the ITC's remand. That judgment, the Court noted, established "the legal relationship between the parties." *Id.* By not originally issuing the order, Commerce violated "the basic proposition that all orders and judgments of courts must be complied with promptly" and risked contempt: as the Court cautioned, "[p]ersons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Id.* at 1356–57. (internal quotes and citations omitted). To comply "promptly" with all prior judgments, Commerce made the order effective January 23, 2009 — the day on which liquidation was originally suspended.[1] Of course, Commerce could not actually travel back in time and submit the order for publication in January 2009. It could only place the order in the *Federal Register* on November 4, 2009 — after it complied with the Court's mandamus decision. But because all the protections of the order were tied to the effective date, that date performed all the legal functions normally associated with the order's actual appearance in the *Federal Register*.

The Coalition claims, however, that the order's retroactive effective date does not accomplish all the functions of publication because the "retroactive collection of cash deposits . . . is not the legal equivalent of having timely instituted prospective cash deposits." Pl. Br. at 17. However, the Coalition provides absolutely no rationale to support that claim. In fact, there are none. The protection to domestic industry is accomplished by the collection of deposits — although, in the normal course, such deposits are collected contemporaneously with entries, there is no reason why retroactive collection of deposits would not also offer the domestic

---

[1] That Commerce correctly gave the order a retroactive date was confirmed when the Federal Circuit held that "Commerce's duty to issue antidumping duty orders and begin collecting cash deposits on the subject entries" was triggered by the ITC's January 22, 2009, notice. *Diamond Sawblades Mfrs. Coalition*, 626 F.3d at 1382.

industry protection.  True, the Coalition did not receive "on-going" protection from January to November, 2009.  Pl. Br. at 17.  But Commerce's instructions to collect cash deposits retroactively compensated for that omission.  There is simply nothing to suggest that "on-going" collection has some unique talismanic power that cannot be replicated by other means.

This Court's mandamus decision is not to the contrary.  The Coalition claims that this decision already established that "retroactive collection of moneys is not the same as their ongoing collection."  Pl. Br. at 18.  In fact, the Court's decision was much more nuanced.  In that decision, the Court stated that it "cannot agree that the future collection of cash deposits (or, as the case may be, the collection of retroactive *duties*, with interest) provides the same benefit to [the Coalition] as would immediate issuance of an order and the collection of cash deposits." *Diamond Sawblades Mfrs. Coal.*, 650 F. Supp. 2d at 1355–56 (emphasis added).  On its face, this statement reveals that the Court believed that real-time collection of cash deposits provides a degree of protection that is not accomplished by the retroactive collection of duties — in other words, the Court was stating that cash deposits *themselves* offer a degree of protection.  But the Court was *not* considering the retroactive collection of *cash deposits* or the protection such retroactive collection of cash deposits would offer.  Accordingly, the holding should not be read as a categorical finding that *all* retroactive collection of money is inferior to contemporaneous assessments.  Indeed, such reasoning would not make sense.

Likewise, neither the legislative history nor the cases that the Coalition marshals say anything about whether collection of cash deposits has to be prospective in order to be effective. *See* Pl. Br. at 18 (citing H.R. Rep. No. 96-249, at 76 (1979), *reprinted in* 1979 U.S.C.C.A.N. 315; H.R. Rep. No. 96-317, at 62 (1979), *reprinted in* 1979 U.S.C.C.A.N. 1293).  All the legislative history establishes is that  cash deposits are necessary "to ensure protection of the

revenue" before final duties are assessed.  1979 U.S.C.C.A.N. 1293.  The cases make the point

that cash deposits also protect the domestic industry.  *See Decca Hospitality Funishing, LLC v.*

*United States*, 30 CIT 357, 365–66 (2006); *Tianjin Magnesium Int'l Co., Ltd. v. United States*,

533 F. Supp. 2d 1327, 1331 n.12 (2008).  But there is no reason why retroactive collection of

cash deposits does not ensure the same protection.

Simply put, the antidumping order on diamond sawblades offered the Coalition all the

protections to which it was entitled beginning on January 23, 2009.  That date therefore

constitutes the constructive date of the order's publication.

## II.    Using The Constructive Publication Date In Place Of The *Federal Register* Date Is Consistent With The Statutory Scheme

Once January 23, 2009, is properly recognized as the order's constructive publication

date, the only question that remains is whether using that constructive date to initiate the sunset

review was proper.  Contrary to the Coalition's claims, it was.

As an initial matter, nothing in the statute precludes Commerce from relying on a

constructive publication date.  The statute merely speaks to "publication" — it does not specify

that the publication has to be actual rather than constructive.  The latter is just as valid a

publication date as the former.  Indeed, the very point of a constructive publication date — just

as a constructive notice — is that it fully stands in for the real thing.

Meanwhile, using the order's November 2009 *Federal Register* date as the anniversary

for conducting the sunset review would be inconsistent with the overall structure of the

antidumping duty scheme, as elucidated by the Statement of Administrative Action, H.R. Rep.

No. 103-316 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 4040 (SAA).[2]  The SAA explains that

_____

[2]  Congress has mandated that the SAA "shall be regarded as an authoritative expression
by the United States concerning the interpretation and application of the Uruguay Round

the Uruguay Round Agreements Act (URAA) "sets a time limit on the imposition of

antidumping measures."  SAA at 817.  The SAA also notes that section 1675(c) "requires

Commerce and the Commission to conduct a [five-year] review no later than five years after the

issuance of an antidumping duty order."  Taken together, these provisions require that orders be

reviewed every five years.

       This scheme is echoed in Commerce's implementing regulations, which explain that the

"[URAA] revised the Tariff Act of 1930 . . . by requiring that . . . orders be revoked . . . after five

years unless revocation . . . would be likely to lead to a continuation or recurrence of (1)

dumping or a countervailable subsidy, and (2) material injury to the domestic industry."  *See*

*Policies Regarding the Conduct of Five-year ("Sunset") Reviews of Antidumping and*

*Countervailing Duty Orders; Policy Bulletin*, 63 Fed. Reg. 18,871, 18,872 (Dep't of Commerce

Apr. 16, 1998).  Moreover, this scheme has been recognized by a number of Federal Circuit

decisions.  *See, e.g.*, *NSK Corp. v. United States ITC*, 716 F.3d 1352, 1355 (Fed. Cir. 2013)

("Pursuant to 19 U.S.C. § 1675(c), every five years after the issuance of an antidumping duty

order, Commerce and the Commission conduct a review of whether an antidumping order is still

necessary to protect the domestic industry or whether that order can be 'sunset.'"); *Agro Dutch*

*Indus., Ltd. v. United States*, 508 F.3d 1024, 1028 (Fed. Cir. 2007) ("Once an antidumping order

has been issued . . . . the order is automatically terminated after five years unless, upon review in

accordance with the procedures established under 19 U.S.C. § 1675a, Commerce determines that

revocation of the duty 'would be likely to lead to continuation or recurrence of dumping,' and

---

Agreements and [the Uruguay Round Agreements Act] in any judicial proceeding in which a
question arises concerning such interpretation or application."  19 U.S.C. § 3512(d) (1999).  The
Federal Circuit has repeatedly recognized that the statute should be interpreted to be consistent
with the SAA.  *See, e.g.*, *Timken United States Corp. v. United States*, 421 F.3d 1350, 1354–55
(Fed. Cir. 2005); *AK Steel Corp. v. United States*, 226 F.3d 1361, 1368–69 (Fed. Cir. 2000).

the ITC determines that revocation 'would be likely to lead to . . . material injury' to the relevant

United States industry.").  Taken together, these provisions contemplate that an antidumping

order protect the industry for a limited time before review.

Here, of course, the order has been in effect since January 23, 2009.  The protections

offered by the order — including cash deposit rates — have covered that period.  Waiting until

November 2014 to conduct the sunset review would keep the order in place for five years and

nine months — far beyond the contemplated five-year mark.  Under the statutory scheme

described by the SAA, Commerce's regulations, and the Federal Circuit's decisions, such a result

would be unreasonable.

This is all the more true given that the November date that the Coalition wants

Commerce to use simply has no significance.  The date marks the fact that Commerce had not

*originally* complied with the statute, but it is not operative with respect to the antidumping duty

order because Commerce corrected its error.  And *because* that November 2009 date is an

artifact, not operative with respect to the order, it should not control subsequent decisions about

how the order is to be administered.  For all purposes — including deciding when to initiate the

sunset review — the constructive publication date should govern.  *Cf. Diamond Sawblades Mfrs.*

*Coalition*, 650 F. Supp. 2d at 1352 (noting that the idea that an "unlawful determination

continues to govern after issuance of judgment is simply a legal impossibility" (internal quotes

and citations omitted)).

The Coalition contends, however, that Commerce has never before used anything *other*

than the date when the order appeared in the *Federal Register* for initiating the sunset review.

*See* Pl. Br. at 20–21.  This claim — though true — is irrelevant.  The Coalition has not identified

a single case where the effective date of the order predates the order's appearance in the *Federal*

*Register* by a period anywhere as long as the one we have here.  In fact, we are aware of none. Further, although the Coalition correctly notes that in certain cases, Commerce assesses duties on entries pre-dating the publication date of the order, the time prior to the date of the order is circumscribed by the statute and is of much shorter duration.  *Cf.* 19 U.S.C. §§ 1673b(d) and 1673d(c).  Moreover, in most of the cases that the Coalition cites, the effective date of the order is exactly the same as the date the order appears in the *Federal Register*.  In all those prior cases, the order had no constructive publication date distinct from the date that the order appeared in the *Federal Register*.  Here, by virtue of the order's unique history, such a constructive publication date exists.[3]

The Coalition also asserts that Commerce has used November as the anniversary month in conducting *annual* reviews of the very order at issue. Pl. Br. at 22.  But those determinations are ultimately unavailing because they do not implicate the same considerations that govern sunset reviews.  Although, as with sunset reviews, the timing of annual reviews is also linked to the order's "publication," there is no provision in the statute, the SAA, or international agreements limiting how long an order may continue to exist without such reviews.  *See* 19 U.S.C. § 1675(a).[4]  As a result, the anniversary date for annual reviews of the diamond sawblades order does not implicate the question presented here — namely, whether Commerce should use the order's actual or constructive publication date to initiate the review.  Contrary to the Coalition's claims, this is not a matter of interpreting the term "publication" differently in

---

[3]  In fact, this case is not just unique in the sense that it is unlike those that came before it — it is also unique in the sense that it is very unlikely to be repeated.  The reason is because the courts have now defined when Commerce is required to publish an order in cases where the ITC's initial negative determination is subsequently changed to an affirmative one; as a result, there should be no need for the type of litigation that we saw here.

[4]  Indeed, because these reviews are not automatic, an order may exist for multiple years without a review.  *See* 19 U.S.C. § 1675(a).

different contexts.  Pl. Br. at 21–22.  Rather, it is a matter of actually determining when legally-operative publication occurred.  Here, Commerce had reason to consider that question in a way that it had not done previously.  That, having considered the question, Commerce came to a different conclusion than before does not make Commerce's determination improper.  *Cf. Nippon Steel Corp. v. United States*, 433 F. Supp. 2d 1336, 1344 – 46 (2006), *rev'd on other grounds*, 494 F.3d 1371 (Fed. Cir. 2007) (stating that the fact that a finding was supported by substantial evidence in a previous remand "does not prevent the Commission from lawfully reaching a different conclusion on the same issue in a subsequent remand proceeding").

The Coalition also claims that Commerce "recently initiated the fourth [] administrative review" based on its old interpretation of what anniversary date governs.  Pl. Br. at 22 (citing *Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part* , 78 Fed. Reg. 79,392, 79,394 (Dep't Commerce Dec. 1, 2013).  That initiation predates the initiation of the sunset review by one day.  But this time difference does not reveal that Commerce's decision to change course is inherently improper.  The decisions when to initiate the annual review and the five-year were proceeding on separate tracks.  Once again, the fact that Commerce came to different interpretation of the facts regarding publication in different proceedings segments does not suggest that one or the other determination is incorrect.

In the end, Commerce's decision to use the order's January 2009 constructive publication date as the anniversary date for the five-year review correctly gives effect to both the Courts' decisions and the statutory scheme.  The Coalition can show no error in this result.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court deny plaintiff's motion for preliminary injunction, and enter judgment in favor of the United States.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

JEANNE E. DAVIDSON
Director

 s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

NATHANIEL HALVORSON
Attorney
Office of the Chief Counsel
   for Trade Enforcement and Compliance
U.S. Department of Commerce

s/ Alexander V. Sverdlov
ALEXANDER V. SVERDLOV
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
PO Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-5928
Email:  alexander.v.sverdlov@usdoj.gov

June 20, 2014

Attorneys for Defendant United States

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE RICHARD K. EATON, JUDGE

————————————————————— )
DIAMOND SAWBLADES                        )
MANUFACTURERS' COALITION,                )
                                          )
    Plaintiffs,              )
                                          )
    v.                       )  Court No. 13-00391
                                          )
UNITED STATES DEPARTMENT OF              )
COMMERCE and UNITED SATES                )
INTERNATIONAL TRADE                      )
COMMISSION,                              )
                                          )
    Defendants.              )
————————————————————— )

## **ORDER**

   Upon consideration of plaintiff's motion for judgment on the administrative record, it is

hereby

   ORDERED that plaintiff's motion is denied; and it is further

   ORDERED that defendants may proceed to conduct the five-year "sunset" reviews of the

antidumping duty order on diamond sawblades and parts thereof from the People's Republic of

China published as *Diamond Sawblades and Parts Thereof From the People's Republic of China*

*and the Republic of Korea*, 74 Fed. Reg. 57,145 (Dep't of Commerce Nov. 4, 2009).

Dated: _____, 2014      _____
   New York, NY            JUDGE