Slip Op. 14-111

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ———————————————— : | |
| DIAMOND SAWBLADES : | |
| MANUFACTURERS' COALITION, : | |
| : | |
| Plaintiff, : | Before: Richard K. Eaton, Senior Judge |
| : | |
| v. : | Court No. 13-00391 |
| : | |
| UNITED STATES DEPARTMENT OF : | |
| COMMERCE and UNITED STATES : | |
| INTERNATIONAL TRADE : | |
| COMMISSION, : | |
| : | |
| Defendants. : | |
| ———————————————— : | |

## MEMORANDUM and ORDER

[United States Department of Commerce's motion to dismiss is denied; plaintiff's motion for summary judgment is granted.]

Dated: September 23, 2014
Amended:  October 30, 2014

*Daniel B. Pickard* and *Maureen E. Thorson*, Wiley Rein LLP, of Washington, D.C., argued for plaintiff.

*Alexander V. Sverdlov*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, D.C., argued for defendant United States Department of Commerce.  With him on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director.  Of counsel on the brief was *Nathaniel Halvorson*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, of Washington, D.C.

*David B. Fishberg*, Attorney-Advisor, Office of the General Counsel, United States International Trade Commission, of Washington, D.C., argued for defendant United States International Trade Commission.  With him on the brief was *Neal J. Reynolds*, Assistant General Counsel for Litigation.

EATON, Senior Judge: This action concerns the five-year, or "sunset," review of

the antidumping duty order on diamond sawblades and parts thereof from the People's Republic of

China ("PRC"), for which the United States Department of Commerce ("Commerce" or the

"Department") published a notice in the Federal Register on December 2, 2013, and which was

initiated on January 23, 2014.  Initiation of Five-Year ("Sunset") Review, 78 Fed. Reg. 72,061

(Dep't of Commerce Dec. 2, 2013) ("Initiation Notice"); Diamond Sawblades and Parts Thereof

From China Institution of a Five-Year Review, 78 Fed. Reg. 72,116, 72,117 (Int'l Trade Comm'n

Dec. 2, 2013).  The sole question posed by this case is whether the review was initiated at the

proper time.  Before the court is the motion[1] of plaintiff Diamond Sawblades Manufacturers'

Coalition ("plaintiff" or the "Coalition"), seeking a ruling declaring that the ongoing review is

*ultra vires*, halting that review, and instructing defendants to initiate a sunset review on November

4, 2014.  Pl.'s Mot. (ECF Dkt. No. 30).  Defendants,[2] the Department and the International Trade

Commission ("ITC") (collectively, "defendants"), oppose the motion on the merits, and the

Department has separately moved to dismiss the case for lack of subject matter jurisdiction.  *See*

Def.'s Resp. to Pl.'s Mot. for J. on the Administrative R. (ECF Dkt. No. 40) ("Dep't's Br."); Def.

United States International Trade Commission's Resp. in Opp'n to Pl.'s Mot. for J. on the

Administrative R. (ECF Dkt. No. 41); Def.'s Mot. to Dismiss Pl.'s Compl. for Lack of Jurisdiction

(ECF Dkt. No. 46) ("Dep't's Mot. to Dismiss").  For the following reasons, the Department's

motion to dismiss is denied and plaintiff's motion is granted.

---

[1]      While styled as a motion for judgment on the agency record, the court will treat plaintiff's motion as one for summary judgment pursuant to USCIT Rule 56.

[2]      Although the International Trade Commission has submitted a brief agreeing with, and fully supporting, the arguments made by Commerce, because it makes no arguments of its own, the court will address only those arguments made by the Department.  *See* Def. United States International Trade Commission's Resp. in Opp'n to Pl.'s Mot. for J. on the Administrative R. (ECF Dkt. No. 41).

## BACKGROUND

In 2005, the ITC initiated an injury investigation regarding certain diamond sawblades imported from the PRC and the Republic of Korea ("Korea").[3]  *See Diamond Sawblades Mfrs. Coal. v. United States*, 626 F.3d 1374, 1376 (Fed. Cir. 2010) ("*Diamond Sawblades V*").  The ITC preliminarily determined that there was a reasonable likelihood of injury to a United States industry as a result of the importation of subject merchandise, but then altered its position and found no material injury or threat of material injury in its final determination.  *Id.* at 1376–77.  For its part, the Department made preliminary and final determinations that diamond sawblades were being sold at less than fair value in the United States.  *Id.* at 1376.

The Coalition brought an action in this Court, challenging the ITC's final negative material injury determination and Commerce's less than fair value determinations.  *Id.* at 1377.  The *Diamond Sawblades* Court remanded the case to the ITC, finding that its negative injury determination was insufficiently supported.  *Diamond Sawblades Mfrs. Coal. v. United States*, 32 CIT 134, 135, 151 (2008) ("*Diamond Sawblades I*").  On remand, the ITC found a threat of material injury and the *Diamond Sawblades* Court affirmed that determination.  *Diamond Sawblades Mfrs. Coal. v. United States*, 33 CIT 48, 48, 67 (2009) ("*Diamond Sawblades II*").

After the issuance of *Diamond Sawblades II*, Commerce continued the suspension of liquidation of the subject imports of diamond sawblades, but took the position that it was not required to publish antidumping duty orders or direct the collection of cash deposits on ongoing

---

[3]        Korea is no longer covered by the antidumping duty order because the Department revoked it with respect to "diamond sawblades from Korea, pursuant to a proceeding under section 129 of the Uruguay Round Agreements Act to implement the findings of the World Trade Organization dispute settlement panel in [the] United States."  Diamond Sawblades and Parts Thereof From Korea, 78 Fed. Reg. 36,524, 36,525 (Dep't of Commerce June 18, 2013) (final results of antidumping duty administrative review, 2010–2011) (citation omitted).

imports of subject merchandise until the appeal of *Diamond Sawblades II* to the U.S. Court of

Appeals for the Federal Circuit had been resolved. *Diamond Sawblades V*, 626 F.3d at 1377.

Disputing this position, the Coalition petitioned the *Diamond Sawblades* Court for "a writ of

mandamus directing Commerce to publish antidumping duty orders and immediately begin

collecting cash deposits," and the *Diamond Sawblades* Court granted the writ. *Id.*; *Diamond

Sawblades Mfrs. Coal. v. United States*, 33 CIT 1422, 1452–53, 650 F. Supp. 2d 1331, 1357

(2009) ("*Diamond Sawblades III*").[4]  Thereafter, on September 30, 2009, the *Diamond Sawblades*

Court issued its judgment directing Commerce to forthwith "issue and publish antidumping duty

orders and require the collection of cash deposits on subject merchandise." *Diamond Sawblades

III*, 33 CIT at 1422, 1453, 650 F. Supp. 2d at 1331, 1357.

On November 4, 2009, the Department published the antidumping duty order in the

Federal Register.  Diamond Sawblades and Parts Thereof From the PRC and Korea, 74 Fed. Reg.

57,145 (Dep't of Commerce Nov. 4, 2009) (antidumping duty orders) ("Antidumping Order").

Therein, the Department stated the effective date of the Antidumping Order as January 23, 2009

and further stated that it would direct U.S. Customs and Border Protection ("Customs") to collect

cash deposits for unliquidated merchandise "as of" that date.  Antidumping Order, 74 Fed. Reg. at

57,146.  Thus, Commerce stated that it would direct the retroactive collection of cash deposits. *See*

Antidumping Order, 74 Fed. Reg. at 57,146.

---

[4]      While the appeal in *Diamond Sawblades III* was pending, the Federal Circuit issued
an opinion affirming *Diamond Sawblades II*.  *Diamond Sawblades Mfrs. Coal. v. United States*,
612 F.3d 1348, 1362 (Fed. Cir. 2010) ("*Diamond Sawblades IV*").  Thereafter, in *Diamond
Sawblades V*, the Federal Circuit affirmed the issuance of the writ of mandamus and rejected the
Department's position that it was not required to publish the antidumping duty order until after all
appeals relating to the order had been resolved.  *Diamond Sawblades V*, 626 F.3d at 1382–83.

Following its publication, the Department conducted three administrative reviews[5] under

19 U.S.C. § 1675(a)(1) (2006), and used November 4, 2009 as the anniversary date of the

Antidumping Order's publication.  The reason for this choice was given in the notice for the first

review.  Therein, the Department stated that it chose the November 4 date rather than the January

23, 2009 effective date set out in the Antidumping Order because November was the anniversary

for the publication of the Antidumping Order, and its regulations directed the use of that date.

Thus, the Department stated:

> Although the effective date of the [Antidumping Order] is January 23, 2009, based
> on the date of the suspension of liquidation, the Department designates November
> as the anniversary month for the[] diamond sawblades order[] because this is the
> month in which the Department published the notice for the[ Antidumping Order].
> In its regulations, the Department defines the anniversary month as the calendar
> month in which the anniversary of the date of publication of an order . . . occurs.
> Therefore, consistent with section 751(a)(1) of the Tariff Act of 1930 [(19 U.S.C. §
> 1675(a)(1))], as amended, and [19 C.F.R. § 351.213(b)], the first opportunity to
> request a review of the above-referenced order[] will be in November 2010.

Diamond Sawblades and Parts Thereof From the PRC and Korea, 75 Fed. Reg. 969, 970 (Dep't of

Commerce Jan. 7, 2010) (notice of anniversary month and first opportunity to request an

administrative review) (citation omitted).  The November 4 date was also used in the succeeding

administrative reviews.  *See, e.g.*, Initiation of Antidumping and Countervailing Duty

---

[5]         The period of review for the first administrative review of the Antidumping Order
was January 23, 2009 through October 31, 2010.  Diamond Sawblades and Parts Thereof From the
PRC, 78 Fed. Reg. 11,143, 11,143 (Dep't of Commerce Feb. 15, 2013) (final results of
antidumping duty administrative review).  For the second administrative review of the
Antidumping Order, the period of review was November 1, 2010 through October 31, 2011.
Diamond Sawblades and Parts Thereof From the PRC, 78 Fed. Reg. 42,930, 42,931 (Dep't of
Commerce July 18, 2013) (amended final results of antidumping duty administrative review;
2010–2011).  The period of review for the third administrative review was November 1, 2011
through October 31, 2012.  Diamond Sawblades and Parts Thereof From the PRC, 79 Fed. Reg.
35,723, 35,723 (Dep't of Commerce June 24, 2014) (final results of antidumping duty
administrative review; 2011–2012).

Administrative Reviews and Request for Revocation in Part, 78 Fed. Reg. 79,392, 79,392, 79,394

(Dep't of Commerce Dec. 30, 2013).

Although it consistently used November 4 for purposes of initiating administrative

reviews, Commerce determined that it would use January 23, 2009 as the date to calculate the

five-year period after which to conduct the sunset review, based on the stated effective date in the

Antidumping Order.  As a result, when the Department published the notice of initiation of the

sunset review on December 2, 2013, it stated that the sunset review would be initiated on January

23, 2014.  *See* Initiation Notice, 78 Fed. Reg. at 72,061; Diamond Sawblades and Parts Thereof

From China Institution of a Five-Year Review, 78 Fed. Reg. at 72,117.  Plaintiff, by its motion,

now challenges defendants' decision to use January 23, 2009 as the anniversary date on which to

begin conducting the sunset review, rather than November 4, 2009, the actual date of publication.

On July 11, 2014, during the pendency of this action, the Department published its portion

of the sunset review that commenced on January 23, 2014, finding "that revocation of the

antidumping duty order on diamond sawblades from the PRC would be likely to lead to

continuation or recurrence of dumping at weighted-average margins up to 164.09 percent."

Diamond Sawblades and Parts Thereof from the PRC, 79 Fed. Reg. 40,062, 40,063 (Dep't of

Commerce July 11, 2014) (final results of the expedited sunset review of the antidumping duty

order).  At this time, the ITC's portion of the review has barely begun.  Oral Arg. Tr. 29:23–25,

Aug. 5, 2014 (ECF Dkt. No. 51) ("Oral Arg. Tr.").

## DISCUSSION

### I.  SUBJECT MATTER JURISDICTION AND MOTION TO DISMISS

The Department has separately moved to dismiss this action for lack of subject matter jurisdiction under the theory that plaintiff now has, and has always had, the ability to obtain complete relief by challenging the final determination once the sunset review is finished.  Dep't's Mot. to Dismiss 5 ("[T]he Coalition may challenge the sunset review pursuant to 28 U.S.C. § 1581(c).").

Plaintiff initiated this action under 28 U.S.C. § 1581(i) (2006) and, following the publication of the Department's determination in its portion of the sunset review, on July 11, 2014, plaintiff brought another case under 28 U.S.C. § 1581(c), challenging that determination for the same reasons as those put forward in this case.  Compl. ¶ 2 (ECF Dkt. No. 2); Summons, No. 14-00171 (2014), ECF Dkt. No. 1.

Under law developed by this Court and the Federal Circuit, "jurisdiction under subsection 1581(i) may not be invoked if jurisdiction under another subsection of section 1581 is or could have been available, unless the other subsection is shown to be manifestly inadequate." *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292–93 (Fed. Cir. 2008) (citing *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006)).  This Court has previously held that a determination requiring a party to participate in an unlawful unfair trade proceeding is reviewable during the pendency of the proceeding under 28 U.S.C. § 1581(i). *See Dofasco Inc. v. United States*, 28 CIT 263, 268, 326 F. Supp. 2d 1340, 1345 (2004) ("[F]orcing Dofasco to wait until a final determination has been issued before it may challenge the lawfulness of the administrative review, would mean that Dofasco's opportunity for full relief—i.e., freedom from participation in the administrative review—would be lost." (citations omitted)); *see also Borusan*

*Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 38 CIT __, __, 986 F. Supp. 2d 1381,

1388–89 (2014) (recognizing a line of cases in which plaintiffs "sought to stop an allegedly

unnecessary or ultra vires administrative proceeding before [they] were burdened with" it and in

which jurisdiction under 19 U.S.C. § 1581(i) was confirmed by this Court); *Diamond Sawblades*

*Mfrs.' Coal. v. U.S. Dep't of Commerce*, 38 CIT __, __, 968 F. Supp. 2d 1338, 1342 (2014), *appeal*

*dismissed*, 560 F. App'x 998 (Fed. Cir. 2014).   In other words, this Court has found that, when

faced with an unlawfully commenced review, waiting for the final determination of the review to

challenge its unlawful commencement is "manifestly inadequate," and jurisdiction under section

1581(i) is available.

      Despite Commerce's arguments to the contrary, relief under section 1581(i) is still

available to plaintiff.   As the parties each acknowledged at oral argument, although the

Department has completed its part of the sunset review, the ITC's portion of the sunset review is in

its nascent stage.   Oral Arg. Tr. 29:23–25.   Indeed, that process, which counsel for the ITC

recognized can be onerous for interested parties, has not entered its most burdensome period.   Oral

Arg. Tr. 29:23– 30:5.   Thus, plaintiff still seeks a remedy that 28 U.S.C. § 1581(c) cannot provide,

namely being excused from further participation in an ongoing *ultra vires* proceeding.[6]

---

[6]       Defendants insist that cases in this Court have held that, where the question is the "timing" of the commencement of agency action, jurisdiction under section 1581(i) is unavailable. Department of Commerce's Reply in Supp. of its Mot. to Dismiss Pl.'s Compl. for Lack of Jurisdiction 3–4 (ECF Dkt. No. 55) (citing *Tianjin Magnesium Int'l Co. v. United States*, 32 CIT 1, 533 F. Supp. 2d 1327 (2008); *Tokyo Kikai Seisakusho, Ltd. v. United States*, 29 CIT 1280, 403 F. Supp. 2d 1287 (2005)).   Those cases are distinguishable from the facts presented here, because, in those cases, commencement of the proceeding was clearly left to the discretion of Commerce. Here, defendants' actions are clearly beyond their discretion and are *ultra vires*.   In other words, the cases stand for the proposition that jurisdiction can be controlled by the facts.   In addition, the *Tokyo* Court found that participation in the early stage of the review would not be burdensome, a far different set of facts than present here.   *See Tokyo*, 29 CIT at 1287, 403 F. Supp. 2d at 1294.

Accordingly, the court continues to have jurisdiction under 19 U.S.C. § 1581(i) and the

Department's motion to dismiss is denied.


**II.    THE SUNSET REVIEW WAS UNTIMELY COMMENCED**

Plaintiff maintains that defendants have acted beyond the scope of their authority by

seeking to conduct a sunset review of the Antidumping Order prior to the five-year anniversary of

November 4, 2009, the date of publication of the order in the Federal Register.  Pl. Diamond

Sawblades Manufacturers' Coalition's Mem. in Supp. of its Mot. 27 (ECF Dkt. No. 30) ("Pl.'s

Br."). For plaintiff, November 4, 2009, the actual date of publication of the Antidumping Order in

the Federal Register, is the date of publication for purposes of 19 U.S.C. § 1675(c)(1).  Pl.'s Br. 12.

There is no dispute that the actual publication date of the Antidumping Order was November 4,

2009.  Pl.'s Br. 12; Dep't's Br. 4.  Therefore, plaintiff insists that the plain language of the statute

requires the Department to wait until November 4, 2014 to commence the sunset review.  Pl.'s Br.

12. For plaintiff, the early commencement is *ultra vires*, and accordingly, the court should direct

that the sunset review be halted.  Pl.'s Br. 27.

In the Antidumping Order itself, the Department's sole reason given for choosing the

effective date of January 23, 2009 was that, "because suspension of liquidation[7] is already in

effect for all entries of diamond sawblades from the PRC . . . entered, or withdrawn from the

warehouse, for consumption on or after January 23, 2009, the effective date of the[] antidumping

duty order[] . . . is January 23, 2009."  Antidumping Order, 74 Fed. Reg. at 57,146.  It is worth

---

[7]         Liquidation is "the 'final computation or ascertainment of duties . . . accruing upon
entry' of the goods."  *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1351 (Fed. Cir.
2006) (alteration in original) (quoting 19 C.F.R. § 159.1) (citing 19 U.S.C. § 1500(d)).  Here,
liquidation was suspended January 23, 2009.

noting that the Department understood that no court directed the use of the January 23, 2009 date.
*See* Antidumping Order, 74 Fed. Reg. at 57,146 ("The CIT's order of September 30, 2009, did not
address the effective date of any potential antidumping duty orders . . . ."). Nor, for that matter, did
plaintiff seek this earlier effective date. Rather, defendants determined, on their own, to use the
earlier date and now apparently claim that Commerce was acting within its authority to determine
an effective date of January 23, 2009. *See* Dep't's Mot. to Dismiss 5–6. The court finds
defendants' position to be untenable and that the sunset review was untimely commenced. Thus,
plaintiff's motion is granted.


### A. Legal Framework

Under 19 U.S.C. § 1675(c)(1), the Department "and the ITC must review antidumping and
countervailing duty orders every five years." *Nucor Corp. v. United States*, 601 F.3d 1291 (Fed.
Cir. 2010) (citing 19 U.S.C. § 1675(c)(1) (2006)); *see also* 19 C.F.R. § 351.102(b)(49) (2012)
(defining the term "sunset review" to mean a review under 19 U.S.C. § 1675(c)) . Pursuant to 19
U.S.C. § 1675(c)(1),

> 5 years after *the date of publication* of . . . an antidumping duty order . . . the
> administering authority and the Commission shall conduct a review to determine . .
> . whether revocation of the . . . antidumping duty order . . . would be likely to lead to
> continuation or recurrence of dumping . . . and of material injury.

19 U.S.C. § 1675(c)(1) (emphasis added) (footnote omitted). Thus, in accordance with the statute,
five years "after the date of publication of" the *Diamond Sawblades* Antidumping Order, the
Department and the ITC are required to conduct a sunset review to determine whether or not the
Antidumping Order should be revoked. Additionally, under the Department's regulations, a notice
of initiation of a sunset review of an antidumping duty order must be published "[n]o later than 30
days before the fifth anniversary date of an order . . . ." 19 C.F.R. § 351.218(c)(1) (2012).

**B.  Plaintiff's Motion Is Granted**

The court grants plaintiff's motion for several reasons, namely because (1) the plain

language of the statute explicitly directs Commerce to begin a sunset review "5 years after the date

of publication of . . . an antidumping duty order" in the Federal Register, (2) the use of the

November 4, 2009 date is consistent with the Department's application of the phrase "date of

publication" in other parts of the same statute, (3) use of the January 23 date is inconsistent with

Commerce's interpretation of the phrase "date of publication" when commencing administrative

reviews of the Antidumping Order, (4) defendants' use of the January 23 date does not comport

with the unfair trade laws' statutory scheme, and (5) defendants' theory of notice by "constructive

publication" is without merit.  19 U.S.C. § 1675(c)(1) (footnote omitted).


*1.   The Plain Language of the Statute*

The plain language of 19 U.S.C. § 1675(c)(1) requires the Department to commence the

sunset review of an antidumping duty order five years after the date of publication of the order in

the Federal Register.  *See* 19 U.S.C. § 1675(c)(1).  Although the term "date of publication" is not

defined in the statute, plaintiff is correct that the "phrase is no term of art" and that the general

understanding of the term "is not an ambiguous definition[.  P]ublication of an antidumping duty

order occurs when such an order is communicated to the public, whether in printed form or

otherwise."  Pl.'s Br. 10.  Indeed, defendants concede as much.  *See* Dep't's Br. 5.

The word publication is understood by English speakers to mean "[t]he act or process of

publishing printed matter."  *See* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH

LANGUAGE 1416 (4th ed. 2000).  Legal sources do not indicate a contrary meaning.  *See, e.g.*,

BLACK'S LAW DICTIONARY 1423 (10th ed. 2014) (defining the term "publication" as "[g]enerally,

the act of declaring or announcing to the public").  The language of the statute is, thus, a clear and

unambiguous directive to the Department.

Indeed, the Department's sunset review regulations do not contain a definition of "date of

publication," indicating that Commerce understands the statutory directive to be clear.  Moreover,

Commerce makes no claim for deference under *Chevron*.  *See* Dep't's Br.; Dep't's Mot. to

Dismiss.  "The so-called *Chevron* line of cases provides guidance to Courts when a statute is silent

or ambiguous."  *Beijing Tianhai Indus. v. United States*, 38 CIT __, __, Slip Op. 14-104, at 7

(2014) (citing *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842–45 (1984)).

"[A]gencies are entitled to formulate policy and make rules 'to fill any gap left, implicitly or

explicitly, by Congress.'"  *SKF USA Inc. v. United States*, 254 F.3d 1022, 1030 (Fed. Cir. 2001)

(quoting *Chevron*, 467 U.S. at 843).  Here, because there is no gap to be filled, the Department has

not sought, and is not entitled to, deference under *Chevron*.  That is, section 1675(c)'s command to

conduct a sunset review "5 years after the date of publication of . . . an antidumping duty order" is

not ambiguous.  19 U.S.C. § 1675(c)(1) (footnote omitted).  Therefore, the use of any date other

than November 4, 2009 as the "date of publication" conflicts with the plain meaning of the statute

and, thus, fails as a matter of law.  *See* ROBERT A. KATZMANN, JUDGING STATUTES 50 (2014)

(noting that, under the canons of statutory construction, "if the language is plain, construction is

unnecessary").

### 2.  *Consistent Use Within the Same Statute*

Next, the use of November 4, 2009 is in keeping with how the Department has interpreted

the phrase "date of publication" in other parts of the statute.  In particular, 19 U.S.C. § 1675(a)(1)

allows administrative reviews of antidumping duty orders to be conducted "[a]t least once during

each 12-month period beginning on the anniversary of the date of publication of . . . an

antidumping duty order." 19 U.S.C. § 1675(a)(1).  As the Department acknowledges, it has

consistently treated the "date of publication" of antidumping duty orders as the same date for

administrative reviews and sunset reviews.  Dep't's Br. 12.  Indeed, to accept any other result

would be to adopt inconsistent definitions of the same term, not only within the same statute, but

within the same section of the statute.  Thus, the Department's use of January 23, 2009 as the

"effective date" of publication would violate the rule of statutory construction that "[t]he same

words used twice in the same act are presumed to have the same meaning."  NORMAN J. SINGER &

J.D. SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § 46:6, at 249 (7th ed. 2007);

*see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1995) (citations omitted) ("[T]he term should

be construed, if possible, to give it a consistent meaning throughout the Act.  That principle

follows from our duty to construe statutes, not isolated provisions.").


### 3.   *Consistent Use Under the Antidumping Order*

The court also finds that using the January 23 date for purposes of initiating the sunset

review would be inconsistent with how the Department has interpreted "date of publication" with

respect to determinations it has made pertaining to administrative reviews under the Antidumping

Order itself.  Again, pursuant to 19 U.S.C. § 1675(a)(1), "[a]t least once during each 12-month

period beginning on the anniversary of the date of publication" of an order, the Department, upon

request, shall conduct an administrative review.  19 U.S.C. § 1675(a)(1).  As has been noted, for

each of the administrative reviews conducted under the Antidumping Order, Commerce has used

November 4 as the anniversary date of the "date of publication."  *See, e.g.*, Initiation of

Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in

Part, 78 Fed. Reg. at 79,392, 79,394 (identifying the Antidumping Order as having a November

anniversary date); Antidumping or Countervailing Duty Order, Finding, or Suspended

Investigation; Opportunity To Request Administrative Review, 78 Fed. Reg. 65,612, 65,613

(Dep't of Commerce Nov. 1, 2013) (noting that the anniversary month for which interested parties

can request an administrative review of the Antidumping Order is the month of November).  To

use the January 23, 2009 date as the date of publication for sunset review purposes would thus be

inconsistent with all other "date of publication" determinations made under the Antidumping

Order and would thus violate the Department's past practice.


        *4.  Statutory Scheme*

        In addition, although Commerce and the ITC argue that their use of the January 23 date is

consistent with the statutory scheme, this is decidedly not the case.  Dep't's Br. 9.  In making their

argument, defendants rely on the notion that plaintiff has had the protection of the antidumping

laws from January 23, 2009 because the liquidation of entries of diamond sawblades was

continued from that date and because cash deposits were retroactively imposed from that date

when the Antidumping Order was published on November 4, 2009.

> The protections offered by the order—including cash deposit rates—have covered
> that period.  Waiting until November 2014 to conduct the sunset review would keep
> the order in place for five years and nine months—far beyond the contemplated
> five-year mark.   Under the statutory scheme described by the [Statement of
> Administrative Action], Commerce's regulations, and the Federal Circuit's
> decisions, such a result would be unreasonable.

Dep't's Br. 11.  It is worth noting, however, that there is no record evidence that any, let alone all,

of the cash deposits were actually retroactively collected.  Diamond Sawblades and Parts Thereof

from the PRC, 70 Fed. Reg. 77,121, 77,121, 77,134 (Dep't of Commerce Dec. 29, 2005)

(preliminary determination of sales at less than fair value, postponement of final determination,

and preliminary partial determination of critical circumstances).  Thus, there is little to indicate

that the domestic producers benefitted from the claimed protections.

     In addition, as plaintiff points out, 19 U.S.C. § 1673e(a) mandates that an antidumping duty

order contain, among other things, a directive that "requires the deposit of estimated antidumping

duties pending liquidation of entries of merchandise *at the same time as estimated normal customs

duties on that merchandise are deposited*."  19 U.S.C. § 1673e(a)(3) (2006) (emphasis added);

Pl.'s Br. 9.  Here, for the entries made between January 23, 2014 and November 4, 2014, no

antidumping cash deposits were required at the time of entry.  Rather, only normal customs duties

were imposed.  The Department did not order the retroactive collection of cash deposits until the

publication of the Antidumping Order in the Federal Register on November 4, 2009.  Antidumping

Order, 74 Fed. Reg. at 57,145, 57,146.  Thus, defendants' proposed use of January 23, 2009 as the

anniversary date does not comport with the statutory scheme for collection of cash deposits (and

the protection afforded the industry thereby) because they were not collected at the time that

normal duties were collected.

     More importantly, in making its "statutory scheme" argument, defendants point only to the

protections provided to domestic producers by the unfair trade laws.  Dep't's Br. 7–11.  Although

an antidumping duty order protects domestic producers by imposing duties and providing for the

collection of cash deposits, the portion of the statutory scheme providing for sunset reviews fulfills

a different intention.  The purpose of a sunset review is to determine if the imposition of an

antidumping duty order has had the effect of causing those covered by the order to mend their

ways, i.e., to discover if they have stopped dumping.  Thus, publication of the Antidumping Order

put producers and exporters of diamond sawblades on notice that (1) the order was in place, (2)

administrative reviews could be requested in the future, and (3) if the Antidumping Order

survived, a sunset review would be commenced.  This notice, however, was only given to those

interested on November 4, 2009.

   With respect to sunset reviews, in accordance with our treaty arrangements,[8] Congress

chose a five-year period as the time-frame to be examined.  Uruguay Round Agreements Act,

Statement of Administrative Action, H.R. REP. NO. 103-316, vol. 6, at 879 (1994), *reprinted in*

1994 U.S.C.C.A.N. 4040, 4205.  As with administrative reviews, in a sunset review, Commerce

looks backward[9] to see what the behavior of the producers and exporters has been during a

preceding time period.  Therefore, in a sunset review, Commerce looks five years back to

determine whether the dumping and injury to the domestic industry have subsided in the years

following the imposition of the order.

> In determining whether revocation of an order . . . would likely lead to
> continuation or recurrence of dumping, the Department considers the margins
> established in the investigation and/or reviews conducted during the sunset review
> period, as well as the volume of imports for the periods before and after issuance of
> the order (or acceptance of the suspension agreement).

ENFORCEMENT & COMPLIANCE ANTIDUMPING MANUAL Ch. 25, at 7 (Oct. 13, 2009)

(footnote omitted).  Thus, defendants' assertion that the "effective date performs all the

legal functions normally associated with publication" is not correct because it ignores the

notice function of publication.  Dep't's Br. 5–6.

---

[8]      The Uruguay Record Agreements Act revised the Tariff Act of 1930 by requiring
that antidumping and countervailing duty orders be reviewed every five years.  Uruguay Round
Agreements Act, Statement of Administrative Action, H.R. REP. NO. 103-316, vol. 6, at 879
(1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4205.

[9]      The antidumping statutory scheme is "inherently retroactive."  *SKF USA, Inc. v.
United States*, 537 F.3d 1373, 1381 (Fed. Cir. 2008).  Thus, the statute "'expressly calls for the
retrospective application of antidumping review determinations.'"  *SeAH Steel Corp. v. United
States*, 34 CIT __, __, 704 F. Supp. 2d 1353, 1362 (2010) (quoting *Am. Permac, Inc. v. United
States*, 10 CIT 535, 539, 642 F. Supp. 1187, 1191 (1986)).

Were the court to adopt defendants' use of the January 23, 2009 effective date of

the Antidumping Order, the period of useful examination for the now underway sunset

review would be shortened to four years and three months.  This is because no one was put

on notice that the Antidumping Order was in place on January 23, 2009, nor were cash

deposits being collected following that date.  While defendants rely on the idea that

domestic producers gained the protection of the Antidumping Order from January 23,

2009, they ignore the purpose of the Antidumping Order to give notice to foreign producers

and exporters (and, more importantly, the importers who actually pay the duties) that it was

in effect.  Thus, between January 23, 2009 and November 4, 2009, diamond sawblades

were entering the United States with the producers and exporters believing that no order

was in place and without the burden of cash deposits.  Therefore, no producer or exporter

was put on notice that its behavior in the five years succeeding January 23, 2009 would be

examined to determine whether the Antidumping Order should continue.  Because no one

was put on notice of the existence of the Antidumping Order until November 4, 2009,

defendants' claim that the statutory scheme confirms the use of the January 23 date is

unconvincing because it does not take into account either the notice function of publication

or the purpose of sunset reviews.


### 5.   *Constructive Notice by Publication*

Finally, a word is needed on defendants' theory of notice by "constructive publication."

According to Commerce and the ITC, notice of the Antidumping Order was "effectively" given on

January 23, 2009 because it was "constructively published" on that date. Dep't's Br. 6.  They base

this claim on their argument that the retroactive collection of antidumping duties fully protected

the domestic industry.  Dep't's Br. 6 ("Here, however, the order was made retroactively operative,

and its protections were made to extend back *before* its *Federal Register* date.").  For defendants,

this "constructive publication" necessarily provided constructive notice.

Constructive notice by publication is a legal fiction that presumes that persons have read

something that they may have never seen.  Thus, "[w]hen a court says that the defendant received

'constructive notice[,]' . . . it means that he didn't receive notice but we'll pretend he did." *Torry v.*

*Northrop Grumman Corp.*, 399 F.3d 876, 878 (7th Cir. 2005).  While constructive notice by

publication has its place, the sole case relied on by defendants, for the proposition that the

publication on November 4, 2009 somehow provided constructive notice that the Antidumping

Order was in effect as of January 23, 2009, does not support their argument.  *See* Dep't's Br. 6

(citing *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 27 CIT 1541, 1549 n.10, 285 F. Supp.

2d 1371, 1378 n.10 (2003) (citations omitted)).  The *Cathedral Candle* Court found that

publication in the Federal Register of a notice stating that the ITC was preparing a list of those

"potentially eligible" to receive "Byrd"[10] funds resulted in constructive notice to interested parties

of the "existence of the list."  *Cathedral Candle*, 27 CIT at 1549 n.10, 1550, 285 F. Supp. 2d at

1378 n.10, 1379 ("It is well established by both statutes and cases that publication of an item in the

Federal Register constitutes constructive notice of anything within that item.  Plaintiffs were on

constructive notice of the existence of the list and Customs' request that questions be directed to

the ITC *from the time of publication* onward." (emphasis added) (citations omitted)).  Nothing in

the case indicates that publication can constitute constructive notice effective on a date prior to

actual publication.  Rather, it holds that constructive notice is effective "from the time of

---

[10]      Pursuant to the continued Dumping and Subsidy Offset Act of 2000, codified at 19
U.S.C. § 1675c (2000) ("Byrd Amendment"), certain "affected domestic producers" were entitled
to distributions of antidumping and countervailing duties collected by the United States.

publication onward." *Id.* at 1549 n.10, 285 F. Supp. 2d at 1378 n.10.  In other words, the interested

parties were put on notice of the existence of the list from the date of publication forward, whether

they actually saw the published notice or not, but were not charged with knowledge prior to the

date of publication.

The Department and the ITC assert that, on January 23, 2009, the public was somehow put

on notice of the Antidumping Order even though it first appeared in the Federal Register over nine

months later.  Defendants' claim of constructive notice by publication, of course, completely

changes that concept.  Constructive notice, rather than actual notice, can occur when, for instance,

persons are served with process by publication.  Then, although those served may never see the

notice that the law affords, notice is presumed and service is good from the date of publication

forward.  Here, defendants would change the rule so that *failure* to publish would notify those

interested that the Antidumping Order was in place.  Defendants cite no law and make no

compelling argument to support their notice by "constructive publication" claim.  Because no one

was put on notice either constructively or actually of the existence of the Antidumping Order until

November 4, 2009, this argument fails.


### CONCLUSION and ORDER

As the Department points out, it is unlikely that the facts present here will be repeated.  *See*

Oral Arg. Tr. 16:1–9.  If true, then no practice or precedent will be established by this case.

Therefore, the time for correcting this one-time mistake has come.

For the foregoing reasons, the Department's motion to dismiss is denied, plaintiff's motion

is granted.

Defendants are hereby

ORDERED to rescind the Final Results published by Commerce on July 11, 2014; it is further

ORDERED that defendants cease further activity with respect to the sunset review initiated on January 23, 2014; and it is further

ORDERED that defendants initiate the sunset review of the Antidumping Order on November 4, 2014.

Dated:  October 30, 2014
         New York, New York


                                                    _____/s/ Richard K. Eaton_____
                                                              Richard K. Eaton